May it please the Court, Gregory Murphy. I'm with Federal Defenders of San Diego on behalf of Mr. Alcasar-Sanchez in this case. Your Honors, in this appeal, we're asking the Court to hold that when a defendant like Mr. Alcasar-Sanchez, who presents profoundly mitigating factors, appears before the Court for sentencing, District Court must offer some explanation for his decision to nonetheless impose a sentence that corresponds to the range roughly appropriate to the typical case, to a defendant with a similar background who doesn't present these mitigating factors. This — Well, the District Court did that viewing the case as a downward departure under guidelines and explained, as I understand it, why he didn't apply whatever 5K, whatever it was, because he didn't think that his mental circumstance actually was the reason for the crime. But he didn't do it more generally. Is that your issue? That's right, Your Honor. I think the Seventh Circuit's decision in Miranda is very close to the facts of this case. And it's cited in our reply brief, came out after we had filed our opening brief. But in that case, the Seventh Circuit, I think, makes a useful distinction between commenting on the record and actually applying the 3553A factors. Well, I have two more questions that aren't related to each other. One of them is that although the Court did not depart downward, I believe there was a point at which the sentencing judge said something like, I'm giving him credit for his mental incapacity because for a normal person, I would have imposed a higher sentence based on the nature of the crime and some other things. So I am giving him the benefit of that, but it still doesn't bring him below. So I'd like to comment on that, and then I have another question. Certainly, Your Honor. Your Honor is absolutely correct that the district court did mention that, but for Mr. Alcazar-Sanchez's overwhelming mental deficiencies, his schizophrenia, and his limited intellectual functioning, he might have imposed a higher sentence. Importantly, however, he did not make any particular findings with respect to any aggravating factor in this case, and he did not say that Mr. Alcazar, that he would have imposed, for example, a higher than a guideline sentence had Mr. Alcazar-Sanchez come before the Court without these deficiencies. He did not note that there was anything aggravating in his past, and in fact, he applied a 16-level increase, the largest increase that I'm aware of under the guidelines, given the nature of his prior convictions. So the aggravating factor was already taken into account in his calculation of the guidelines. He made no additional evaluation. He was required to and did not specifically apply the 3553A factors to Mr. Alcazar-Sanchez. Actually, as I read what he said, and I was sort of troubled by this. As I understand it, your client has two problems. He has severe intellectual deficiencies and he has schizophrenia, serious mental health problems. That's right. And the district judge clearly took the first into account, but what I don't see is where he took the second into account, because he said I would be inclined to provide a more significant sentence, a sentence that would be significantly higher, but for the defendant's limited intellectual capacity. And that is certainly a factor. And then he says again later, the crime is I think it's a very serious one, but for the intellectual limitations, I would have imposed a greater sentence. But he never says anything about this notion that the, given his psychiatric problems, the incarceration has a different impact on him than on anybody else and so on. There doesn't seem to be any indication that he took that into account. Is that accurate? That's exactly right, Your Honor. But you said otherwise before. You said that he took both into account, and I'm not seeing that. I misspoke. But I think the district court conflated a number of considerations into one. At some point, as the district court in the Marin decision did, seemed to conflate an insanity defense with the argument that these were mitigating circumstances. He did specifically address it. He does mention the intellectual function, but he doesn't respond to any defense of our arguments. He does say, but for the intellectual limitations that counsel has talked about, that was used. So you may be using that, I took that to mean a shorthand for everything that you had talked about that was mentally related. But let me ask you the other question that bothers me, and maybe government counsel can answer this same question. In the PSR, there was a specific recommendation at page 12 that in view of his federal medical center, and the judgment doesn't make that recommendation. There's a blank on the recommendation page of the judgment. And there's no discussion of that at sentencing. Is that an issue that a trial court is required to comment on when it's in the PSR? There may be situations where there's an argument about it. But here there's a specific recommendation. Did you argue for that as well? And if not, is that something that the district court was obliged to discuss and comment on one way or the other? I did not specifically argue for the federal medical center. I, to be candid, believe that a recommendation to the federal medical center would certainly come in this case. The Bureau of Prisons will do that, is what you're saying, without a recommendation? That the recommendation in the pre-sentence report, and given the unambiguous mental illness and limited intellectual functioning before the court, and the fact that the government presented no evidence other than a sentencing summary chart, that under those circumstances, the court would naturally make a recommendation to a federal medical center. But the court didn't. That's what I'm asking about. The court did not. The judgment didn't. And so I guess what I'm struggling with is whether that's a problem, or whether the Bureau of Prisons would automatically do the right thing based on what's in the PSR or without something in the judgment. The last I checked, Mr. Officer Sanchez was not in a federal medical center. It's never too late for the district court to make a recommendation as to the institution. You could ask him tomorrow to please write a letter recommending the institution. Quite likely I should think that he would, and the BOP would do with it whatever it would have done previously, I should think. And as it turns out, Judge Welken, we have – I mentioned that in open court with government counsel, and I was instructed to supply something in writing, which I haven't yet done. But we're pursuing that. So I know that isn't an issue you raised in the briefing, but I don't know nearly as much as Judge Welken about how those recommendations work.  I think at the very least, Your Honor, it's evidence that he was not as focused, as Judge Berzon points out, on the schizophrenia as he was on maybe some other things. And I think in this regard, maybe it's useful to look at the Rita decision, where in the penultimate paragraph of that decision, the Supreme Court said, well, look, the defendant raised certain medical concerns and the judge responded to those medical concerns because he specifically directed the person to receive medical treatment or made a recommendation in that regard. Here, we raised a number of things regarding his schizophrenia. We submitted records from his imprisonment that show that his time on custody has been deteriorated. His mental condition deteriorated spectacularly within days of arriving in custody, that he's certainly suffering more seriously than other people. And the record is completely bare with respect to any of those. He addressed not only none of our concerns, none of Mr. Alcazar's arguments for mitigation in those regards, but he also addressed none of Mr. Alcazar-Sanchez's arguments for why his prior was fully accounted for by the guideline analysis and that there was nothing aggravated that warranted a higher sentence in those regards. Instead, the district court, in approximately half a page, mentioned that he thought it was a serious offense and that he recognized there were mitigating mental illness, and he indicated that he had considered all the factors that he had mentioned and not and imposed a sentence. And we respectfully suggest that a guideline sentence for someone who is so transparently not a heartland candidate requires an additional explanation. And unless the Court has a question right now, I'll reserve the remainder of my time. Kagan. Well, you, I guess, agree that your issues about the pleadings and the priors and the deportations and all of that is, while you disagree with it, is foreclosed by binding precedent? I do. Thank you. Thank you, Mr. Murphy. Never hurts to preserve. Good morning, Your Honors. Excuse me. May it please the Court. I'm Jonathan Shapiro for the Respondent. As I understand Appellant's argument, it really boils down to his claim that the district judge, that Judge Hayes, misapplied the 5K2.13 standard. Well, that's not really true, because under our current precedent, that's really not the issue. I'm sorry. I agree with Your Honor. I think the issue is ultimately reasonableness. Right. And I believe that Judge Hayes' sentence in this case was reasonable. But reasonableness we now know has two parts, one of which is procedural in nature, and that is to go through all the factors and be sufficiently responsive to the defense arguments that we can meaningfully review what the Court's thinking is. And I think, as I understood it, that that's where the argument primarily lies with what we were talking about with opposing counsel. So in this case, did the district court adequately address the mental illness segment of the argument? He did, Your Honor. He did it in at least two points during the course of the sentencing hearing. First, he did it when he addressed the request for a downward departure under 5K2.13. In that regard, he stated the standard, and then he proceeded to make a factual finding, and that factual finding was that he didn't find, based on the material before him, that Mr. Alcazar was suffering from a psychotic episode at the time of the offense. Now, that's a relevant factual finding, because if you look at the sentencing memorandum that was submitted on Mr.  you can see that he was schizophrenic, and as a result of that psychotic mental illness, that significantly contributed to his commission of the offense. Well, that's one of the arguments, but the other argument was that because of his psychotic condition, the impact of incarceration would be particularly severe on him, and therefore he should have a lesser sentence. Yes, Your Honor. And that, I believe, was taken up when the judge later said specifically, and this is when he's addressing the 3553A factors, and specifically the history and characteristics of Mr. Alcazar, and in that regard, Your Honor, he says, if you'll bear with me, I believe this is at page 89 of the excerpts of record, the judge says that he's considered that. Counsel spoke at length about his medical history, and as well I've referenced the nature of the prior offense. In other words, he stated on the record that he heard Mr. Murphy's arguments with respect to his medical condition. That includes the schizophrenia. That includes eliminated mental functioning. And I agree with Mr. Murphy in this regard, that Rita does illuminate the issue before the court, because there the court was dealing with what is required, what must a district judge do by way of explaining a sentence. For what I can see, and I do think these terms are considered, I don't see any reason for not reading them as written or as stated, he did take into account his limited intellectual capacity, but there's no indication that he took into account, beyond the question of whether it impacted the commission of the crime, his psychosis. Again, Your Honor, I do think that that saying he considered, very specifically he considered the nature and characteristics of the defendant, including his medical history, all of the medical history that was presented. He did respond to a very specific and seems to me pertinent point about this particular person, which as I understand it, is he was having severe hallucinations while he was in prison, which were making the prison experience a special severity for him. And there's no indication that the district judge had any cognizance of that or took any account of it. Well, I think he did, too, again, Your Honor, when he said that, but for his condition, he would have given him a much more significant. His limited intellectual capacity, that's what he said. I mean, are we to think that district judges don't know the difference between cognitive deficits and psychosis? Your Honor, I think that if you look at this in context and if you look at the arguments that were being presented at the time, at most it's perhaps an imprecision in the court's use of the language. But to me it would be extremely precise. I mean, I thought he was saying exactly what he meant, and he meant to say that he was taking into account that he had severe and limited intellectual capacity, and he wasn't taking into account his mental health, psychosis issues. It was never presented, well, the argument was for a departure under 5K2.13. And so I would suggest that the arguments that are being made now, that the sentence should somehow have been less because of how he experiences custody. You're talking about page 86, our requested diminished capacity departure, which is based both on schizophrenia and intellectually challenged. Is that? Yes, Your Honor. That was really the thrust of the sentencing. But in any event, I do think that he did take into consideration that he did in fact give him the last sentence, which was what was requested. Okay. And the court says at page 89 that considering the medical history as a whole, that is that sufficient for any of reasons? I think it is, Your Honor. I think when you look at Rita, because that's almost precisely what happened there. Page 84 of the transcript, the argument that you say was recently made is made very specifically before the trial judge. He suffers from profound mental illness. He suffers from schizophrenia. He has traumatic delusions. He's currently in segregation. The records show that the trauma impacts him more severely. He believes he's being violated every night as a result of his, et cetera. So that argument was made very specifically. And then it says Mr. Alcazar also suffers from very significant cognitive and intellectual limitations. So those distinctions were being made throughout this argument. People understood that we were talking about two things. Is that not accurate? Your Honor, I think that that's fair. I do think, however, that the Court addressed all of these issues and, as a result, gave what he believed was a significantly lesser sentence than he would have given another defendant who had Mr. Alcazar's criminal history and had committed this crime. So I do think that he considered it. I think that when you look at Rita, to say that he considered the medical history, as Judge Hayes did here, that's essentially what the judge in Rita did. He didn't necessarily address each and every one of the arguments that were made, but he reflected on the record that he heard them, he considered them, and then he handed down his sentence, a sentence which now, in view of Gaul, should by itself be... Well, then I guess the alternative way to read this is that it becomes substantive, that he affirmatively rejected the consideration that I just read to you, that is, that his psychosis and his reaction to prison should have influenced the sentence given. In other words, if he didn't leave it out, then he rejected it. So then we have a substantive question, which was, is it reasonable for him to have rejected it? I don't think he rejected it, Your Honor. My reading of the record is that he considered it. All right. He considered it, but he rejected it. He considered it. I'm sorry. I mean, the one reading, your reading is he considered it. If he considered it, he rejected it, right? Because he said, I did take into account the intellectual capacity, but he didn't say I took into account his psychosis and schizophrenia. So if he considered it, he rejected it. That could be one way to read it, Your Honor. And so then we have a substantive reasonableness question, which was, is it that reasonable? Was it reasonable not to take into account this person's ongoing mental health problems? Well, I think that would be taking it into account, Your Honor. I mean, I think that's what is required. Paul, not to reduce the sentence from the guidelines because of it. I don't think the issue is whether or not it's a guideline sentence or not a guideline sentence. He reduced it from what he otherwise would have given. I mean, the defendant, Mr. Alcazar, got the benefit that he was seeking, which was for the judge to consider his mental health history. Which is what the court did, in fact, do. Yeah. I mean, you could read it as saying, I've thought about everything. He does say, I've thought about the medical history that's been detailed to me. And then he says, here are the 3553 factors and the sentence. And he may be saying, I would have given a person a higher sentence who had a higher intellectual capacity. And maybe he's not giving any discount for schizophrenia. But you're saying that's reasonable. He doesn't have to give a further discount for schizophrenia if it doesn't meet the requirements of the downward departure. Is that what? I think that's accurate. He certainly doesn't have to. So I do think that that's reasonable. Well, or if it doesn't outweigh the other 3553 factors. It doesn't have to be grounds for a downward departure.  Correct, Your Honor. And I'm mindful that I'm out of time. I would just note that he did find an aggravating factor in Mr. Alcazar's criminal history. To say that he didn't, I think, is to misread the record. He said on a number of occasions that he had a very serious prior offense. It's not uncommon for a district judge to not rehearse in open court the nature of a prior offense of this nature. I think it's usually defense counsel's preference that they don't do so. But it was a serious offense. It was a sexual assault of an 11-year-old over a three-month period. And that was among, the judge considered all the 3553A factors, and that was certainly one of them that the judge considered. Unless there are further questions, I'm mindful that I'm out of time. Thank you, counsel. And, Mr. Murphy, I believe you have a little bit of time left. I have just a few considerations. First, responding to Mr. Shapiro's point, in fact, the judge did mention the nature of the prior conviction earlier in the transcript. He says he has a prior conviction with indecent liberties with an 11-year-old. Why isn't it permissible for the court to have said, I've considered everything? Here is a place where he says, I've considered it all. I've heard this medical history. And you've just told him the whole thing. And then he says, and I've looked at all these factors, and I've come up with 41 months. And if he were smarter, I would have given him more. What's wrong with that? Well, Your Honor, under Gall, the court was required and didn't to articulate in terms of the 3553A factors with a degree of precision why it is that a guide-in-mind sentence was nonetheless warranted. Why this case was nonetheless warranted a sentence that would otherwise be given to somebody with, it would nonetheless be a rough approximation of the proper sentence for somebody without his deficiencies. And I do think Rita, I think we all agree that Rita is instructive in this regard. But Rita affirms the conviction because it's, the sentence, because it says, look, this is a, the court concluded this was a typical case. And we don't see that the court was wrong in concluding this was a typical case. In that case, they said, look, the district, the defense didn't suggest that all people with military records should get lower sentences or that he faces a particular danger in prison. Essentially what he did was to rely primarily on the seriousness of his past crime and seriousness of his current crime and say, look, I'm giving him the bottom of the guidelines because he's not very bright. But everything else in his background being the same, presumably including his schizophrenia, I would against somebody else a whole lot more. I guess I don't understand what's missing for us to determine whether this is reasonable. The thrust of what the Supreme Court is saying is you need to be able to understand enough of what the district court did to decide whether it had been listening to defense counsel as well as the prosecution and whether there was a thought process that you can determine whether it makes any sense. And I guess that may be minimal, but I don't understand why this doesn't meet that minimal standard. I realize I'm out of time. If I may just very briefly respond. First, two points. First, I don't know that the record is clear that he considered all the arguments. As Judge Berzon has pointed out, he has he didn't respond to a number of non-frivolous arguments in any He says on page 89 with respect to the history and characteristics of the defendant, counsel spoke at length about his medical history and referenced also the nature of the prior offense. I mean, I think he's saying I'm hearing you. I'm listening to you. I've heard it all. And, of course, that's exactly what the district court in the Miranda opinion before the Seventh Circuit said. I've considered all the factors, those I've mentioned, those I haven't. But I think the other thing that we haven't mentioned yet is that Gall makes clear that it's significant procedural error to fail to explain the sentence, not just to permit meaningful appellate review, but also to promote the appearance of fair sentencing. And in this case, the district judge didn't explain, even if he considered it, and I'm not certain he did, he didn't explain the sentence in any way that would satisfy either of those. And I think the speculation that Mr. Shapiro and I and the court are all engaged in regarding his what he may have been considering or rejecting or accepting speaks to that failure to explain in this very unusual case with a very unusual defendant. Thank you, counsel. I appreciate the arguments of both parties. They've been very helpful. And with that, we will submit this case and we're adjourned for this session.
judges: Graber, Berzon, Wilken